UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| POWER SYSTEMS, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No.: 3:13-CV-382-TAV-CCS |
| | ) |
| THE HYGENIC CORPORATION, and | ) |
| HYGENIC INTANGIBLE PROPERTY | ) |
| HOLDING CO., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION**

This civil matter is before the Court on The Hygenic Corporation ("Hygenic") and Hygenic Intangible Property Holding Co.'s ("HIPHC") (collectively, "defendants") Motion to Dismiss [Doc. 9], in which defendants move to dismiss the amended complaint [Doc. 4] filed by plaintiff Power Systems, Inc. on jurisdictional and other grounds. Plaintiff filed a response [Doc. 21], to which defendants filed a reply [Doc. 25]. Both parties submitted affidavits and exhibits in support of their respective positions. For the reasons discussed herein, and in light of the relevant case law, defendants' motion [Doc. 9] will be granted and plaintiffs' claims against defendants will be dismissed.

I.  **Background**

This dispute arises from the parties' development and sale of color-coded resistance bands used in the physical therapy and rehabilitation industries [Doc. 4 ¶¶ 6, 19]. Plaintiff, a Tennessee corporation headquartered in Knoxville, Tennessee, is

involved in the international distribution of fitness, exercise, and other athletic products and equipment [*Id.* ¶ 1]. Plaintiff conducts business through catalogs and online [*Id.*]. Hygenic is a Delaware corporation located in Akron, Ohio [*Id.* ¶ 2; Doc. 9 at 5]. HIPHC is a Nevada Corporation, which holds intellectual property assets used by Hygenic and is similarly located in Akron, Ohio [*Id.* ¶ 2]. Hygenic is also involved in the sale and distribution of rehabilitative equipment, including a line of resistive elastic bands known as "THERA-BAND" [Doc. 4 ¶ 10; Doc. 9-1 ¶ 3].[1] Hygenic asserts trade dress rights associated with the THERA-BAND line in the form of a color scheme, which includes shades of yellow, red, green, blue, black, and silver/gray and is used by Hygenic in its advertising, packaging, and on its products to designate or identify the THERA-BAND brand [Doc. 4 ¶ 10; Doc. 9-1 ¶ 3].

It is undisputed that defendants have no offices, employees, or other physical presence in Tennessee, and are not authorized to do business within the state [Doc. 9-1 ¶ 6]. Hygenic does, however, sell its products to various distributors, including plaintiff, who in turn sell THERA-BAND products on a national basis, including in Tennessee. These arrangements are governed by purchase agreements entitled "Terms and Conditions of Sale," which, among other terms, provide that each agreement is governed by Ohio law [Doc. 25-2]. Plaintiff alleges that its agreements with Hygenic have produced approximately $250,000 in therapeutic band sales across the country [Doc. 21 at 22]. In addition to sales generated by end-retailers who receive their inventory from

---

[1] Hygenic also sells another line of resistive products known as DYNA-BAND [*Id.*].

Hygenic or other distributors, Hygenic also runs a website that enables purchasing in two ways. First, consumers are able to purchase directly from the website using the site's online shopping features [Doc. 4 ¶ 8; Doc. 21-6 at 3]. In addition, Hygenic's website enables consumers to find local retailers by entering in their zip code or city to purchase THERA-BAND products in person, directing site users to where a given retailer is located and to what products it offers [Doc. 21-6 at 4-5].

On September 10, 2012, Hygenic, acting through counsel, sent a letter via electronic mail to plaintiff's Knoxville headquarters regarding what Hygenic characterized as the "[u]nauthorized" use of the THERA-BAND trade dress in plaintiff's sale of its "Versa-Loop" resistive exercise products [Doc. 4-1]. In the letter, Hygenic notes that its trade dress is associated with other registered trademarks owned by defendants, including the THERA-BAND logo and pyramid design, illustrations of which are set forth in the letter itself [*Id.*]. Hygenic also notes its previous enforcement of the trade dress, specifically referencing a case in which it was involved, *Fabrication Enterprises, Inc. v. Hygenic Corporation*, 64 F.3d 53 (2d Cir. 1995), and contends that trade dress need not be registered in order to be protected [*Id.*]. In addition, Hygenic asserts that plaintiff's replication of the trade dress is likely to confuse consumers and diminish the value of the trade dress [*Id.*]. The letter goes on to state that Hygenic would discuss color schemes that did not infringe the trade dress were plaintiff to change its scheme and requests both written confirmation and a proposed timeline for doing so [*Id.*]. Following this letter, from August 2012 through October 2012 and again in May 2013,

3

plaintiff alleges that Hygenic made several phone calls and exchanged emails with plaintiff to discuss changes being made to plaintiff's color scheme.

After these discussions failed to produce a resolution, plaintiff filed this declaratory action on July 1, 2013 [Doc. 1]. In its amended complaint [Doc. 4], plaintiff seeks a declaratory judgment that it is not infringing defendant's trade dress because the trade dress is invalid or because plaintiff's actions will not cause any actionable likelihood of confusion [*Id.* ¶¶ 51-57]. Plaintiff also moves for cancellation of several marks owned by HIPHC on the United States Supplemental Registration, Nos. 2,037,964, 2,037,965, and 2,037,966, covering marks based on the colors green, pink, and purple when used to indicate the amount of resistance in resistive exercise bands [*Id.* ¶¶ 43-50]. In addition to declaratory relief, plaintiff seeks injunctive relief preventing defendants from filing a cause of action against plaintiff for infringement as well as unspecified damages [*Id.*].

Defendants subsequently filed the instant motion [Doc. 9], arguing that plaintiff's complaint should be dismissed in its entirety for lack of personal jurisdiction, improper venue, and failure to comply with Rule 8 of the Federal Rules of Civil Procedure. Defendants also argue, in the alternative, that plaintiff's claims regarding cancellation of the marks which form the basis for the DYNA-BAND trade dress should be dismissed for lack of subject matter jurisdiction. The Court will address defendants' arguments in turn.

4

## II. Personal Jurisdiction

### A. Standard of Review

In the context of a Rule 12(b)(2) motion based on lack of personal jurisdiction, the plaintiff bears the burden of establishing the existence of personal jurisdiction. *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007) (citing *Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989)). A district court may address such a motion on the parties' submissions or it may permit limited discovery and hold an evidentiary hearing. *Id.* When, as here, the Court does not conduct an evidentiary hearing and relies solely on written submissions and affidavits to resolve the Rule 12(b)(2) motion, "the plaintiff need only make a prima facie showing of jurisdiction. In this situation, [the Court] will not consider facts proffered by the defendant that conflict with those offered by the plaintiff, and [it] will construe the facts in a light most favorable to the nonmoving party." *Indah v. S.E.C.*, 661 F.3d 914, 920 (6th Cir. 2011) (internal citations and quotations omitted). Because the Court relies solely on the written submissions and affidavits to resolve the jurisdictional issue, the burden on the plaintiff is "relatively slight." *See Air Prods.*, 503 F.3d at 549 (citing *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1169 (6th Cir. 1988)).

"Due process requires that a defendant have 'minimum contacts . . . with the forum State . . . such that he should reasonably anticipate being haled into court there.'" *Schneider v. Hardesty*, 669 F.3d 693, 701 (6th Cir. 2012) (quoting *World-Wide*

*Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291, 297 (1980)).  This requirement ensures that the exercise of jurisdiction does not "offend traditional notions of fair play and substantial justice."  *See Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945); *Schneider*, 669 F.3d at 701. Depending on the type of minimum contacts in a case, personal jurisdiction can take one of two forms, general or specific. *Air Prods.*, 503 F.3d at 550; *see, e.g,. Bird v. Parsons*, 289 F.3d 865, 873 (6th Cir. 2002).  Although defendants argue that neither general nor specific jurisdiction exists, the parties' briefs focus almost exclusively on the presence of specific jurisdiction, so the Court will focus its analysis on this form of personal jurisdiction.[2]

"[S]pecific jurisdiction is confined to the adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction."  *Indah*, 661 F.3d at 920 (quoting *Goodyear Dunlop Tires Org. v. Brown*, — U.S. — , — , 131 S.Ct. 2846, 2851 (2011)) (internal quotation marks omitted).  That is, specific jurisdiction "exposes the defendant to suit in the forum state only on claims that 'arise out of or relate to' a defendant's contacts with the forum."  *Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 149 (6th Cir. 1997) (quoting *Helicopteros Nacionales*, 466 U.S. at 414-15 & nn. 8-

---

[2] The Court notes, however, that as general jurisdiction requires a "continuous and systematic presence" in Tennessee, *Bird*, 289 F.3d at 874 (quotations omitted), defendants would not be subject to general jurisdiction within Tennessee based on its sales to distributors such as plaintiff and its operation of a website that facilitates sales.  *See id.* (holding that fact of defendant's operation of website generally accessible to anyone was insufficient to confer general jurisdiction); *see also Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408 at 416-18 (1984) (finding that purchases, even those "occurring at regular intervals," were insufficient to confer general jurisdiction).

6

10). The Sixth Circuit has developed three criteria for determining whether specific jurisdiction exists over a particular defendant:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Bird*, 289 F.3d at 874 (quoting *S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968)).

Thus, for the exercise of specific personal jurisdiction to be appropriate, defendants must have purposefully availed themselves of the privilege of acting or causing a consequence in Tennessee, the instant cause of action must arise from those activities, and defendants' acts or the consequences of those activities must have a substantial enough connection with Tennessee to make the exercise of personal jurisdiction reasonable. *Mohasco*, 401 F.2d at 381.

### B. Analysis

In this case, the parties' dispute centers more on the legal significance of defendants' contacts with Tennessee rather than on factual disputes as to the nature of defendants' contacts. Defendants argue that the contacts alleged by plaintiff are insufficient as a matter of law to support a prima facie showing of personal jurisdiction. Specifically, defendants argue that the September 2012 letter and subsequent communications in which Hygenic attempted to enforce its trade dress rights could not satisfy the purposeful availment requirement. In addition, defendants submit that it

Case 3:13-cv-00382-TAV-CCS   Document 31   Filed 06/24/14   Page 7 of 19   PageID #: 459

would be unreasonable to justify personal jurisdiction based on these enforcement activities alone, as the remaining contacts defendants have with Tennessee are not related to plaintiff's declaratory action.

Plaintiff argues in response that defendants' contacts with Tennessee are sufficient for the exercise of personal jurisdiction, focusing in particular on the following facts: 1) Hygenic's interactions with plaintiff, a Tennessee company, regarding the national distribution of its products; 2) Hygenic's website, which permits Tennessee customers to purchase THERA-BAND products over the internet while also directing customers where to purchase THERA-BAND products in Tennessee; and 3) Hygenic's communications with plaintiff regarding plaintiff's alleged infringement.

        1.       **Purposeful Availment**

Turning to the first *Mohasco* requirement, "the purposeful availment requirement 'gives a degree of predictability to the legal system that allows defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit.'" *Kerry Steel*, 106 F.3d at 150 (quoting *World-Wide Volkswagen*, 44 U.S. at 297). This "ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts." *Id.* (quotations omitted). As noted by the Sixth Circuit, the requirement does not "mean that a defendant must be physically present in the forum state[,]" *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1264 (6th Cir. 1996), and jurisdiction may be exercised "'[s]o long as a commercial actor's efforts are purposefully directed toward residents of another

State [,]'" *id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985)). Such efforts, however, must go beyond merely injecting a product into the stream of commerce. *Bridgeport Music, Inc. v. Still N The Water Pub.*, 327 F.3d 472, 479-80 (6th Cir. 2003). Ultimately, it is the "*quality* rather than the *quantity* of the contacts" that is the proper focus of the analysis. *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 722 (6th Cir. 2000) (citation omitted).

In this case, the Court finds that, at least with respect to Hygenic, plaintiff has presented a prima facie showing that Hygenic purposefully availed itself of the privilege of acting in the state of Tennessee. Although Hygenic's enforcement activity alone would be insufficient to confer jurisdiction, *see America's Collectibles Network, Inc. v. Scorpiniti*, No. 3:06-CV-270, 2007 WL 470351, at *3 (E.D. Tenn. Feb. 8, 2007) (Phillips, J.) (noting that letter and phone calls regarding a plaintiff's infringing activity did not confer specific personal jurisdiction), Hygenic was and is engaged in other activity with the state. Hygenic entered into purchase agreements with plaintiff, thereby sending shipments of its product to Tennessee for distribution by plaintiff both in Tennessee and elsewhere. Hygenic also supervised the sale and distribution of its product by issuance of purchase agreements, which, although governed by Ohio law, were sent to plaintiff in Tennessee, and were coupled with various other communications by Hygenic regarding plaintiff's distribution efforts [*See* Doc. 21-9].

9

Beyond Hygenic's interaction with plaintiff, Hygenic also has contacts with Tennessee through its THERA-BAND website. The website not only permits consumers to purchase products directly, it also enables consumers to find THERA-BAND products within their geographic area, giving consumers a map of their location, contact information, as well as the specific products sold by a particular practitioner [Doc. 21-6 at 4-5]. Although the operation of a website alone may not constitute purposeful availment, the requirement may be met where, as here, the "website is interactive to a degree that reveals specifically intended interaction with residents of the state." *Bird*, 289 F.3d at 874-75. Similar to the manner in which the defendants in *Bird* hosted a website through which forum residents could and did register domain names, thereby availing themselves of the privileges of the forum, Hygenic encouraged Tennessee residents to purchase its products in Tennessee by providing them specific information on where the products could be located. *See, e.g.*, *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 890 (6th Cir. 2002) (noting that interactive features of website, such as providing forum residents with passwords upon purchase of services, supported finding of purposeful availment). While neither Hygenic's relationship with plaintiff nor the services offered on its website to Tennessee consumers would necessarily be sufficient on their own to find the first *Mohasco* requirement has been met, both activities taken together, combined with Hygenic's enforcement activity with plaintiff, indicate that Hygenic availed itself of the privilege of acting within Tennessee.

10

## 2. Whether the Cause of Action "Arises From" Defendants' Activities

The Court's conclusion that Hygenic availed itself of the privileges of acting in Tennessee, based on the previously described contacts, is insufficient to confer specific personal jurisdiction in this case; the claims against it must also arise out of those contacts. *CompuServe*, 89 F.3d at 1267 (citing *Reynolds v. Int'l Amateur Athletic Fed'n*, 23 F.3d 1110, 1116-17 (6th Cir. 1994)). "'If a defendant's contacts with the forum state are related to the operative facts of the controversy, then an action will be deemed to have arisen from those contacts.'" *Bird*, 289 F.3d at 875 (quoting *CompuServe*, 89 F.3d at 1267). "This factor does not require that the cause of action formally arise from defendant's contacts with the forum; rather, this criterion requires only that the cause of action, of whatever type, have a substantial connection with the defendant's in-state activities." *Id.* (quoting *Third Nat'l Bank in Nashville v. WEDGE Grp., Inc.*, 882 F.2d 1087, 1091 (6th Cir. 1989)) (internal quotation marks omitted); *see, e.g.*, *Comty. Trust*, 692 F.3d at 472 (noting that defendant's contacts with forum "must relate to operative facts and nature of the controversy").

This litigation involves an action for declaratory relief. As the Court has previously noted in the patent context, "'the nature of the claim in a declaratory judgment action is to clear the air of infringement charges.'" *Radio Sys. Corp. v. Accession, Inc.*, No. 3:09-CV-481, 2010 WL 2103443, at *4 (E.D. Tenn. May 21, 2010) (quoting *Avocent Huntsville Corp. v. Aten Int'l Co., Ltd.*, 552 F.3d 1324, 1332 (Fed. Cir. 2008)). Such a claim "neither directly arises out of nor relates to the . . . offering to sell . . . of arguably

11

infringing products in the forum." *Id.* (alterations in original) (quotations omitted). Because the claim arises not from commercialization but from the activities of the defendant in enforcing the relevant patent suit, *Avocent*, 552 F.3d at 1332, the relevant inquiry becomes the extent to which a defendant purposefully directed enforcement activities at residents of the forum, "and the extent to which the declaratory judgment claim 'arises out of or relates to those activities[,]'" *id.* at 1332-33 (quoting *Breckenridge Pharm., Inc. v. Metabolite Labs., Inc*, 444 F.3d 1356, 1363 (Fed. Cir. 2006)). Several district courts have held that evidence of sales or shipment to the forum is insufficient to show the requisite nexus between a defendant's contacts and a declaratory cause of action in the trademark context. *See Marlin Firearms, Co. v. Wild West Guns, LLC*, No. 3:09-CV-921 (RNC), 2013 WL 2405510, at *4-5 (D. Conn. May 31, 2013) (finding evidence of sale and shipment of product insufficient in trademark declaratory action because plaintiff's "cause of action would exist even if the sale and shipment had never occurred" and citing cases); *Rolling Thunder, LLC v. Indian Motorcycle Int'l*, No. 2:07-CV-52 TS, 2007 WL 2327590, at *3 (D. Utah Aug. 10, 2007) (finding internet sales insufficient for finding of nexus because it was in "nowise" related to claim for declaration of non-infringement).

While the parties here spend a great deal of argument over the extent of Hygenic's commercial efforts in Tennessee, whether through the internet or through Tennessee-based distributors, the Court finds that the only contacts giving rise to, or forming part of the operative facts of, the controversy pertain to Hygenic's enforcement activity, that is,

12

the September 2012 letter and follow-up emails and phone calls to plaintiff. While Hygenic's Tennessee sales may serve as evidence of purposeful availment, as previously discussed, plaintiff has not shown what relationship, direct or indirect, those sales bear to the question of the validity of Hygenic's asserted trade dress and registered marks. The purpose of this action is to "clear the air" of any allegations of infringement, rather than to determine whether plaintiff has engaged in any infringement, an issue that would involve defendant's use of the mark in commerce. *Avocent*, 552 F.3d at 1332. Given the legal issues presented by plaintiff, defendant's own commercial activity within Tennessee is immaterial to the determination of this action, which would have existed even if defendant's sales "never occurred." *See Marlin*, 2013 WL 2405510, at *5. Thus, it is only defendant's enforcement activities within Tennessee that gave rise to the present declaratory action.

Plaintiff attempts to analogize Hygenic's contacts to the contacts of the defendant in *CompuServe* to show that its action arises from Hygenic's activities. The Court, however, finds that case inapposite. In *CompuServe*, the plaintiff, an Ohio corporation, brought a declaratory action in Ohio against a Texas defendant who had entered into a shareware agreement with the plaintiff which was governed by Ohio law and under which the defendant's software was provided to the plaintiff's subscribers through the plaintiff's server. 89 F.3d at 1260-61. The software files transmitted to the plaintiff from the defendant were stored on the plaintiff's server in Ohio, where the defendant also engaged in exclusive marketing of his software. After the defendant asserted common

13

law trademark rights that he believed the plaintiff had infringed, requesting a $100,000 settlement, the plaintiff filed its declaratory action, which, following dismissal by the district court on personal jurisdiction grounds, was appealed to the Sixth Circuit. *Id.* at 1261. In reversing the district court, the Sixth Circuit found that the defendant's contacts with Ohio gave rise to the plaintiff's declaratory action, because the defendant "placed, marketed, and sold his software only on Ohio-based CompuServe. Thus, any common law trademark or trade name which [defendant] might have in his product would arguably have been created in Ohio . . . ." *Id.* at 1267.[3] In this case, however, Hygenic's contractual relationship with plaintiff was not exclusive, nor did plaintiff's sales of Hygenic's product occur only in Tennessee. More importantly, the trade dress rights discussed by Hygenic in its September 2012 letter and subsequent discussions are not based on common law theories but rather the Lanham Act, further diminishing the relationship between this declaratory action and Hygenic's Tennessee sales and marketing efforts. Thus, the Court finds that defendant's only relevant contact for purposes of determining whether exercising jurisdiction would be reasonable is Hygenic's enforcement activity.

### 3. Whether the Exercise of Jurisdiction is Reasonable

The Court finally considers whether exercising personal jurisdiction over defendant would be reasonable in this instance, that is, "whether it would 'comport with traditional notions of fair play and substantial justice.'" *CompuServe*, 89 F.3d at 1268

---

[3] The Sixth Circuit also found that the defendant had availed himself of the privileges of Ohio for the purposes of specific personal jurisdiction.

(quoting *Reynolds*, 23 F.3d at 1117). An inference arises that this element may be satisfied when the other requirements have been met, *id.*, but the Court must nonetheless consider several factors in making a determination as to this *Mohasco* element, including "the burden on the defendant, the interest of the forum state, the plaintiff's interest in obtaining relief, and the interest of other states in securing the most efficient resolution of controversies," *id.* (quotation omitted).

In the intellectual property declaratory judgment context, the Federal Circuit has held that, in patent cases, cease-and-desist letters and similar enforcement activities, alone, do not suffice to create personal jurisdiction because to permit otherwise would be inconsistent with the principles of fairness underlying the personal jurisdiction analysis. *Red Wing Shoe, Inc. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1360-61 (Fed. Cir. 1998); *Avocent*, 552 F.3d at 1334. Specifically, the *Red Wing* court held:

> principles of fair play and substantial justice afford a patentee sufficient latitude to inform others of its patent rights without subjecting itself to jurisdiction in a foreign forum. A patentee should not subject itself to personal jurisdiction in a forum solely by informing a party who happens to be located there of suspected infringement.

*Id.*

Since *Red Wing*, the Federal Circuit has required additional judicial or extra-judicial activity related to enforcement, such as exclusive licensing agreements, in order to find that exercising personal jurisdiction would comport with the requirements of Due Process. *Avocent*, 552 F.3d at 1334-35 (citing cases); *see, e.g. Campbell Pet Co. v. Miale*, 542 F.3d 879, 886 (Fed. Cir. 2008) (finding that additional acts of informing

customers of infringing product and attempting to have infringing product removed from trade show in forum state were sufficient for personal jurisdiction). Numerous courts have applied this reasoning in both the trademark and other contexts, finding cease and desist letters and similar actions insufficient to confer personal jurisdiction.[4] *See Marlin*, 2013 WL 2405510, at *6 (citing to *Red Wing* and finding that exercising jurisdiction would be contrary to circuit case law regarding due process); *Sinclair v. StudioCanal, S.A.*, 709 F. Supp. 2d 496, 508-09 (E.D. La. 2010) (adopting reasoning of Federal Circuit in granting motion to dismiss when only relevant contact was cease and desist letter); *Rolling Thunder*, 2007 WL 2327590, at *2 (finding that cease and desist letter was "too attenuated" to serve as basis for finding of personal jurisdiction); *Douglas Furniture Co. of Cal., Inc. v. Wood Dimensions*, 963 F. Supp. 899, 903 (C.D. Cal. 1997) ("It would be unreasonable to require an intellectual property owner to risk having to submit to the jurisdiction of an alleged infringer in order to exercise his rights."); *see also Kehm Oil Co. v. Texaco, Inc.*, 537 F.3d 290, 301 (3d Cir. 2008) (noting in contract case that "a cease and desist letter does not rise to the level of purposeful availment for purposes of jurisdiction," citing *Red Wing*); *Meta/Balance, Inc. v. Health Ventures Partners,* No. 03

---

[4] While plaintiff attempts to argue that the Federal Circuit's decisions should be confined to patent law, the Court finds the reasoning of those decisions persuasive in this case, given the similarity in the due process inquiry *See, Marlin Firearms*, 2013 WL 2405510 at *6 n.8 (finding Federal Circuit law persuasive authority and finding that the due process inquiry "similar"); *Nova Design Techs., Ltd. v. Walters*, Civ. Action No. 10-7618, 2011 WL 5084566, at *7 (E.D. Penn. Oct. 25, 2011) (rejecting plaintiff's attempted distinction between patent and trademark licensing).

C 50497, 2004 WL 1345097, at *2 (N.D. Ill. June 14, 2004) (finding that mere licensing of intellectual property was insufficient enforcement activity to establish jurisdiction).[5]

Considering the relevant case law as well as the factors prescribed by the Sixth Circuit, the Court concludes that plaintiff has not made a prima facie showing that there is a substantial enough connection with Tennessee so that exercising personal jurisdiction in this case would comport with "traditional notions of fair play and substantial justice." *Reynolds*, 23 F.3d at 1117. As previously discussed, Hygenic's only relevant contacts for the purposes of this action are the September 2012 letter in which Hygenic informed plaintiff of its trade dress and its belief that plaintiff's products would confuse consumers, as well as the subsequent phone calls and emails in which Hygenic and plaintiff attempted to come up with a new color scheme for plaintiff's products.[6] The Court finds these communications, without any other allegations or evidence of defendant's judicial or extra-judicial enforcement of its trade dress rights, are insufficient to make the exercise

---

[5] *But see ACG Food Cos., Inc. v. Wiscon Corp.*, No. 04-2589 Ml/V., 2005 WL 2114056 (W.D. Tenn. 2005) (finding exercise of personal jurisdiction appropriate based on email informing plaintiff that defendant would oppose trademark registration and may undertake "further legal action"); *Meade Instruments Corp v. Reddwarf Starware LLC*, No. SA CV 9802490GLT (ANx), 1998 WL 377041, at *2 (C.D. Cal. May 11, 1998) (finding exercise of personal jurisdiction appropriate where defendant sent two cease-and-desist letters).

[6] The Court notes that the communications in this case vary from the threats made by the defendant in *CompuServe*, which were more extensive and involved actual settlement demands. *See* 89 F.3d at 1266 (noting that defendant sent regular and electronic messages to plaintiff, posted a message on electronic forum for anyone who wished to read it, and made demand of $100,000 to settle the matter).

of personal jurisdiction in this case reasonable.[7]  As discussed by the court in *Douglas Furniture*:

> any other holding would discourage parties from attempting to resolve their conflicts without resort to the legal system.  If any attempt by an intellectual property holder to put an alleged wrongdoer on notice forced the property holder to submit to the jurisdiction of the alleged wrongdoer's forum, an intellectual property owner would be forced to file an action in his own jurisdiction in order to avoid the threat of being haled before a court in another, possibly distant state.

963 F. Supp. at 902.

The Court finds that the same reasoning applies here.  Hygenic attempted to reach out to plaintiff for the purpose of avoiding litigation.  After those extra-judicial attempts failed, plaintiff filed its declaratory complaint, seeking to not only have the THERA-BAND trade dress discussed in the September 2012 letter declared invalid but also to have three marks registered on the supplemental registration cancelled, which were not discussed in the September 2012 letter or ensuing communications.  Although plaintiff has an interest in obtaining declaratory relief, such interest must be weighed against the burden placed on Hygenic in defending itself in a foreign jurisdiction with which it has few relevant contacts, as well as the judicial interest in securing "the efficient resolution of controversies."  *See Red Wing*, 148 F.3d at 1361 (finding policy favoring settlement appropriate consideration under due process analysis).  Having weighed these competing

---

[7] Although the Court finds that the cease and desist letter at issue in this case insufficient to confer jurisdiction, the Court notes that whether a cease and desist letter and related enforcement activities are sufficient for exercising jurisdiction will depend upon the facts and circumstances of each case.  *See Athletic Training Innovations, LLC v. L.A. Gear, Inc.*, No. 10-1524, 2010 WL 4103309 (E.D. La. Oct. 18, 2010) (finding personal jurisdiction where defendant sent cease-and-desist letter to plaintiff in forum and also sent similar letters to plaintiff's largest customers).

18

interests, the Court concludes that it would be unreasonable to exercise personal jurisdiction against Hygenic in this case, so that personal jurisdiction does not exist as to Hygenic. For the same reasons, the Court also finds that it lacks personal jurisdiction as to HIPHC, particularly given that HIPHC has less contacts with the forum state than Hygenic itself.[8]

### III. Conclusion

For the reasons previously discussed, in light of the relevant case law and the arguments of the parties, the Court concludes that plaintiff has failed to make a prima facie showing that the Court has personal jurisdiction over defendants.[9] Accordingly, defendants' motion [Doc. 9] will be **GRANTED**, plaintiff's claims against these defendants will be **DISMISSED**, and this case will be closed.

ORDER ACCORDINGLY.

s/ Thomas A. Varlan
CHIEF UNITED STATES DISTRICT JUDGE

---

[8] To the extent plaintiff requests permission to conduct discovery prior to a ruling on defendant's motion [Doc. 9], plaintiff has given no indication as to what discovery would be conducted and what additional facts it would hope to learn that would make jurisdiction reasonable. Accordingly, the Court denies any such request.

[9] Given the Court's dismissal on grounds of personal jurisdiction, the Court need not address defendants' remaining arguments.

19